UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| KIMBERLY TAYLOR,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>    Defendant. | Civil Action No. 5:09-CV-00146 (HL) |

## ORDER

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Kimberly Taylor's claim for benefits under the Social Security Act, 42 U.S.C. § 423. Any appeal from this judgment may, by law, be taken directly to the Court of Appeals of the Eleventh Circuit in the same manner as an appeal from any other judgment of a district court. 28 U.S.C. § 636(c)(3).

### I. PROCEDURAL HISTORY

On August 3, 2005, Plaintiff Kimberly Taylor filed her application for a period of disability and disability insurance benefits. (R. 19). In her application, Plaintiff claimed disability arising from an automobile accident that occurred on August 14, 2004, obesity, rheumatoid arthritis, osteoarthritis, fibromyalgia, temporomandibular joint (TMJ) dysfunction,

chronic pain, fatigue, severe allergies, history of stroke, and depression since August 14, 2004. (R. 50). Her application was denied initially and upon reconsideration. (R. 6). Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner, including a hearing before an Administrative Law Judge ("ALJ"). (R. 43). The ALJ conducted Plaintiff's hearing on May 9, 2007. (R. 37). Following the hearing, the ALJ issued a decision unfavorable to Plaintiff on September 28, 2007. (R. 16). The Appeals Council denied Plaintiff's subsequent request for review, making the hearing decision the final decision of the Commissioner. (R. 6).

On November 13, 2009, Plaintiff filed this action. (Doc. 1). In response, the Commissioner filed an Answer (Doc. 7), the administrative record, and a memorandum in support of his Answer. (Doc. 14). In addition to her Complaint, Plaintiff also filed a supporting brief (Doc. 12), and a reply brief in response to the Commissioner's memorandum (Doc. 15). The final decision of the Commissioner on appeal is that of the ALJ issued on September 28, 2007. This matter is now ripe for review under 42 U.S.C. § 405(g).

## II. LEGAL STANDARDS

The Court's review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence and whether the correct legal standards were applied. Walker v. Bowen,

826 F.2d 996 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Court's role in reviewing claims brought under the Social Security Act is, therefore, a narrow one.

The Court may not decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).[1] It must, however, decide if the Commissioner applied the proper standards in reaching a decision. Harrell v. Harris, 610 F.2d 355, 359 (5th Cir. 1980). In so doing, the Court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. Bloodsworth, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. Id. The initial burden of establishing disability is on the claimant. Kirkland v. Weinberger, 480 F.2d 46 (5th Cir. 1973). The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. Oldham v. Schweiker, 660 F.2d 1078 (5th Cir. 1981).

---

[1] Credibility determinations are left to the Commissioner and not to the courts. Carnes v. Sullivan, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also* Graham v. Bowen, 790 F.2d 1572, 1575 (11th Cir. 1986).

A claimant asserting entitlement to benefits must demonstrate that she suffers from an impairment that prevents her from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1). In addition, and with regard to claims for a period of disability and disability insurance benefits, the claimant must meet the insured status requirements set forth in sections 216(i) and 223 of the Social Security Act.

With respect to analyzing the issue of disability, the Commissioner utilizes a five-step procedure. 20 C.F.R. § 404.1520, Appendix 1, Part 404. First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Next, the Commissioner determines whether the claimant's impairment(s) meets or equals an impairment listed in Appendix, Part 404, of the regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work.

Finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work. In arriving at a decision, the Commissioner must consider the combined effect of all the alleged impairments, without regard to whether each, if considered separately,

4

would be disabling.  Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984). The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal.  Id.

III.   ADMINISTRATIVE PROCEEDINGS

At the time of the ALJ hearing, Plaintiff was 39 years old.  She has a Master's degree in mental health counseling and rehabilitation counseling and past work experience as a teacher/testing director and a sales clerk. (Doc. 12).  Following the hearing, and in the written decision, the ALJ first noted that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2009.  The ALJ then proceeded to employ the five step evaluation process identified above.

At step one, the ALJ observed that Plaintiff had not engaged in substantial activity since the onset of disability.  At step two, the ALJ found that Plaintiff's history of obesity, somatic dysfunction of the spine, TMJ dysfunction, fibromyalgia and arthralgias are considered severe impairments.  At step three, the ALJ determined that these medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

Accordingly, and before moving on to step four, the ALJ evaluated Plaintiff's residual functional capacity ("RFC").  In so doing, the ALJ specifically noted that Plaintiff

has the residual functional capacity to perform sedentary work with exceptions. The claimant can lift or carry a maximum of 10 pounds. The claimant can not stand or walk for prolonged periods. The claimant is unlimited in her ability to sit and use the upper extremities. The claimant can occasionally balance, kneel, stoop, crouch, crawl and climb stairs or ramps. The claimant should not work on ladders, ropes, or scaffolds or at unprotected heights. The claimant can not perform overhead work with her left hand. The claimant has no visual or communicative limitations. (R. 22).

In view of these limitations, the ALJ resolved that Plaintiff would be unable to perform any of her past relevant work. Lastly, at step five, the ALJ considered whether suitable work was available to Plaintiff. Given Plaintiff's RFC, age, education, and past work experience, and in reliance upon the testimony of a vocational expert, the ALJ found jobs that exist in significant numbers in the national economy that Plaintiff could perform. Accordingly, the ALJ concluded that Plaintiff was not disabled.

## IV. PLAINTIFF'S CLAIM

In this action, and in support of her request for remand and/or reversal, Plaintiff enumerates the following issues for the Court's review:

1. Whether the ALJ improperly discounted the opinion of Plaintiff's treating physician on how Plaintiff's medical conditions impacted her ability to perform work activity, and whether the ALJ failed to properly evaluate and explain the weight given to the medical evidence.

2. Whether the ALJ failed to consider all of Plaintiff's physical impairments and improperly discounted Plaintiff's pain and mental impairments when conducting the RFC assessment.

3. Whether the ALJ failed to properly evaluate Plaintiff's credibility relative to her mental and physical impairments.

## V. DISCUSSION

### (1) Treating Physician

Plaintiff contends that the Commissioner's decision is not supported by substantial evidence, in that the ALJ failed to articulate specific reasons for rejecting the opinion of her treating physician, Dr. Giles, and the ALJ failed to seek additional evidence or clarification before finding her not disabled. The Commissioner is required to consider opinions from treating and examining sources on issues though the final responsibility for deciding these issues is reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(2). A statement by a medical source that a claimant is disabled or unable to work does not mean that the Commissioner will determine that she is disabled. 20 C.F.R. § 404.1527(e)(1). The opinions of treating physicians are given substantial or considerable weight unless good cause is shown to the contrary. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). Good cause has been found to exist "where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause has also been found where the doctors' opinions were conclusory or inconsistent with their own medical records. Id.

On April 10, 2007, Dr. Giles found that it was highly unlikely that Plaintiff would ever be able to participate in any type of employment again.

7

However, the ALJ relied upon a vocational expert to determine Plaintiff's ability to work again and stated that "the decision of disability is reserved to the Commissioner." (R. 24). Plaintiff argues that the ALJ ignored evidence of fatigue and chronic pain when addressing the treating physician's opinion. A review of the ALJ's written decision reveals that the ALJ afforded little weight to the opinion of Dr. Giles. (Id.)

The ALJ afforded considerable weight, and articulated reasons for attributing significantly more weight, to the opinions and evaluations of Dr. Meck, an agency psychologist; Dr. Wallace, a board certified internist; and Plaintiff's physical therapist. The ALJ found that Dr. Meck's, Dr. Wallace's, and the physical therapist's evaluations were contrary to Dr. Giles' evaluations. (R. 25).

Dr. Meck performed a three hour psychological exam and reported that Plaintiff never reported feeling fatigued and that her ability to work was fair. (Id.) Dr. Wallace performed an EKG and was unable to find evidence of a stroke or the source of Plaintiff's alleged chest pain or shortness of breath. (R. 24). Plaintiff's physical therapist reported that Plaintiff no longer felt pain and achieved her therapy goals and was therefore discharged from physical therapy. (R. 24). The ALJ also relied on the physical therapist's opinion that Plaintiff would continue to improve if she adhered to her home exercise program. (R. 23). In addition, the ALJ considered evidence of X-rays and an MRI, all of which returned negative

8

results concerning Plaintiff's complaints. [2]

The ALJ determined that the only medically determinable causes for Plaintiff's pain were TMJ and Dr. Wallace's report of joint pain attributed to arthritis. (R. 25). The ALJ noted that Plaintiff's symptoms could not be attributed to medically determinable causes, but rather to mental or emotional causes. (Id.) Therefore, the ALJ determined that the treating physician's opinion was not bolstered by the evidence and that the combined evidence of other physicians supported a contrary finding.

Plaintiff also contends that the ALJ failed to seek additional evidence from Dr. Giles when the ALJ relied upon Dr. Giles's lack of specificity regarding Plaintiff's limited ability to perform exertional and non-exertional functions. (Doc. 12 at 13). When the evidence from the treating physician does not contain all the necessary information the ALJ is directed to seek additional evidence or clarification before finding the claimant not disabled. 20 C.F.R. § 404.1512(e)(1). However, an ALJ is not obligated to contact a treating physician where the evidence of record is adequate to determine whether an individual is disabled and does not contain a conflict or ambiguity that had to be resolved. 20 C.F.R. § 416.927(c)(3). The ALJ

---

[2] The ALJ reviewed X-ray results taken on August 16, 2004, in which Plaintiff complained of chest, lower back, and hip pain. The results were all negative. The ALJ also considered an MRI, conducted because an alleged stroke, which showed no evidence of a stroke and returned normal results. The ALJ also evaluated an X-ray of Plaintiff's hands taken on July, 26, 2005, which showed no evidence of advanced degenerative or arthritic changes in her hands. (R. 24).

found that "fortunately there is enough medical evidence to make a determination." (R. 24). The ALJ then described specific findings that led to his conclusion that there was enough evidence to make a determination. (Id.) He discussed Dr. Meck's evaluations directly and addressed the lack of fatigue complaints to Dr. Giles. (Id. at 25). The ALJ also considered Dr. Wallace's and the physical therapist's reports in his determination that the evidence in the entire record was adequate to determine that Plaintiff is not disabled.

The Court finds that the ALJ's decision to afford little weight to Dr. Giles' opinion is supported by substantial evidence. The ALJ pointed to specific reasons for assigning little weight to Dr. Giles' opinion, most importantly, that there were contrary evaluations and that Dr. Giles' opinion is not based on any objective medical findings, but rather Plaintiff's subjective complaints. (R. 25). Furthermore, the Court finds that the ALJ correctly addressed the issue of seeking additional evidence or clarification before finding Plaintiff not disabled.

**(2)  Residual Functional Capacity**

Plaintiff contends that the ALJ failed to consider all of her physical impairments and improperly discounted her pain and mental impairments when assessing her RFC. The determination of RFC is an administrative assessment based on all the evidence of how a claimant's impairments and related symptoms affect her ability to perform work related activities.

Social Security Ruling 96-5p, 196 WL 374183 (1996); *see also* 20 C.F.R. 422.406(b)(1). Relevant medical and other evidence includes medical reports from treating and examining sources, medical assessments, and descriptions and observations of a claimant's limitations by the claimant, family, neighbors, friends, or other persons. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

Plaintiff argues that the ALJ failed to consider her TMJ dysfunction in assessing her RFC. (Doc. 12 at 14). However, the ALJ found that Plaintiff's TMJ was a severe impairment and relied upon the examination of a physical therapist at Peach Regional Medical Center who noted that Plaintiff reported being pain free and able to open her mouth. (R. 24). The ALJ reported that the physical therapist released Plaintiff from therapy because the physical therapy goals were met. (Id.) In making the RFC determination that Plaintiff was able to work, the ALJ relied upon the fact that Plaintiff was directed to continue her therapy exercises at home, but Plaintiff admitted that she was not exercising when she complained of jaw pain to Dr. Giles. (Id.) Therefore, the ALJ adequately addressed Plaintiff's TMJ issues and cited to specific evidence that led to his RFC determination that Plaintiff could perform sedentary work.

Plaintiff also contends that the ALJ erroneously failed to consider the impact of her obesity on her ability to perform work as required by SSR 02-1p. SSR 02-1p recognizes that obesity can cause limitations of function

exertionally and non-exertionally, and that the adjudicator *should* assess the effect obesity has upon the individual's RFC.  Social Security Ruling 02-1p, 67 Fed. Reg. 57859, 57860 (2002).   Plaintiff contends that there is no evidence that the ALJ complied with SSR 02-1p in assessing her RFC; although, the ALJ did note that Plaintiff's obesity was a severe impairment.

An ALJ should assess the effect that obesity has on exertional, postural, and social functions, as well as "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." 67 Fed. Reg. 57863 (2002).  This is something that the ALJ failed to do in this matter.  Nowhere in the decision does the ALJ attempt to identify what functional limitations Plaintiff may have as a result of her obesity, an obesity identified as level III extreme obesity, with a body mass index of 51.7, and considered by the ALJ himself as being "severe."

The ALJ did not consult medical evidence or the vocational expert in determining Plaintiff's ability to work coupled with her obesity.  The ALJ erroneously failed to articulate how the RFC conclusion was reached as to whether obesity caused any physical or mental limitations.  Therefore, this portion of the ALJ's RFC assessment is incomplete and reversed.  On remand the ALJ is directed to comply with SSR 02-1p and, as with any other impairment, explain how the RFC conclusion was reached. Furthermore, the ALJ is directed to consider the combined effects of

obesity with other impairments as recommended by SSR 02-1p.[3]

Lastly, Plaintiff contends that the ALJ failed to properly evaluate her pain and mental limitations. (Doc. 14 at 16). However, the record indicates that the ALJ considered a period of physical therapy from August 24, 2006 until December 7, 2006, in which Plaintiff reported feeling no pain. (R. 24). The ALJ also relied upon Dr. Giles' statement on March 12, 2007, in which Dr. Giles noted that Plaintiff does not experience chronic pain. (Id.) Furthermore, Dr. Meck reported that Plaintiff's memory was found to be in the average range even though she reported having problems concentrating or remembering things. (R. 25). Dr. Meck's evaluation also revealed that Plaintiff's ability to relate to co-workers and deal with work stresses was fair. (Id.) In addition to Dr. Meck's evaluation, the ALJ relied upon the testimony of Plaintiff's sister, in which the sister indicated that she spends four days each week with Plaintiff and she did not report any unusual behavior. (R. 85-90).

In spite of Plaintiff's assertions to the contrary, a review of the ALJ's decision indicates compliance with the aforementioned regulations, with regard to Plaintiff's pain and mental limitations. The ALJ explicitly found that Plaintiff's impairments limited her to performing sedentary work with

---

[3] For example, someone with obesity and arthritis affecting a weight bearing joint, as is the case here, may have more pain and limitation than might be expected from the arthritis alone. SSR 02-1p *available at* http://www.ssa.gov/OP_Home/rulings/di/01/SSR2002-01-di-01.html

some exceptions.

### (3) Credibility

Plaintiff contends that the ALJ failed to properly consider the entire evidence supporting her complaints of pain, and ignored her attempts to treat her pain, in the evaluation of her credibility. An ALJ must apply a three part pain standard when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is such a severity that it can be reasonably expected to give rise to the alleged pain. Id. Once an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability. Foote v. Chater, 67 F.3d 1553, 1560-1561 (11th Cir. 1995); *see also* 20 C.F.R. § 404.1529. However, the ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence when assessing the claimant's subjective pain. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), (4).

In support of her declarations on the issue of credibility, Plaintiff begins by alleging that the ALJ failed to evaluate all of the evidence supporting her complaints of pain, ignored diagnoses and attempts to treat the pain, and that the ALJ misstated the evidence. (Doc. 12 at 18). However, a review of the record reveals that the ALJ properly considered many factors in making the assessment on Plaintiff's credibility. The ALJ relied upon Dr. Meck's medical evaluation in his assessment and found that many of Plaintiff's symptoms were not attributed to medically determinable causes, but rather the origin of some of the symptoms was mental or emotional. (R. 25). The ALJ also noted that Plaintiff's testimony was not persuasive and relied upon Dr. Meck's assessment that Plaintiff's thought processes were marked by somatic concerns. (Id.) The ALJ also raised the issue of credibility at the hearing, in which Plaintiff admitted to driving for a period of at least 30 miles at a time and driving with passengers in the car, although she also admitted to blacking out if she drove for extended periods of time. (R. 19). The ALJ also considered Plaintiff's activities, specifically her ability to attend church and socialize at least three days each week, the testimony of Plaintiff's sister, and Plaintiff's ability to perform chores and run errands in assessing her credibility. (R. 25).

Plaintiff also contends that, contrary to SSR 96-7p, the ALJ ignored her attempts to alleviate pain and other symptoms. (Doc. 12 at 18).

However, a review of the record indicates that the ALJ discussed these issues specifically in his assessment. (R. 25). The ALJ noted that Plaintiff was discharged from physical therapy because the therapy goals were met. (Id.) The ALJ also addressed X-ray and MRI results that were all negative in his assessment on Plaintiff's credibility. (R. 23). The only medical evidence the ALJ found that was in corroboration with Plaintiff's complaints was that of Dr. Wallace, in which Dr. Wallace performed multiple exams including an EKG finding that Plaintiff does have joint pain caused by arthritis. (R. 24). A review of the ALJ's evaluation indicates that he proceeded to make specific findings as to the degree of Plaintiff's limitations by affording significant weight to and accepting those parts of the physician's opinions which had a proper evidentiary basis.

The ALJ articulated explicit and adequate reasons for discrediting Plaintiff's allegations of disabling symptoms. Consequently, the Court is convinced that the ALJ's finding that Plaintiff's declarations were not entirely credible was both legally proper and supported by substantial evidence.

## VI. CONCLUSION

For the foregoing reasons and cited authority, the Court finds that the ALJ's showed sufficient cause to afford less weight to the opinion of Plaintiff's treating physician. The Court also finds that the ALJ correctly articulated specific findings for discrediting Plaintiff's credibility. However,

the ALJ erroneously failed to articulate how the RFC conclusion was reached as to whether obesity caused any physical or mental limitations. Accordingly, the Commissioner's decision is affirmed in part, reversed in part, and remanded for further consideration in accordance with this order.

**SO ORDERED,** this the 1st day of June, 2010.

                               *s/ Hugh Lawson*
                               **HUGH LAWSON, SENIOR JUDGE**

SPO